**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMI L. HAYS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. ____________________ |
| | : | |
| CATALENT PHARMA SOLUTIONS, LLC, | : | |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Ami L. Hays ("Plaintiff" or "Ms. Hays"), by and through undersigned counsel, brings this civil action against Defendant Catalent Pharma Solutions, LLC ("Defendant" or "Catalent"), and avers as follows:

**NATURE OF THE ACTION**

1. This is an action for disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), and for interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

2. Ms. Hays was a successful Project Coordinator for Catalent. Her work was primarily computer-based and performed through Catalent's networked systems. As set forth herein, Ms. Hays required FMLA leave and ADA accommodations due to her own conditions and to care for her disabled daughter. Catalent denied those accommodations, refused to consider alternative accommodations Ms. Hays herself offered, and terminated her employment on October 11, 2024. Accordingly, Catalent's conduct violated the ADA, the FMLA, and the PHRA.

## JURISDICTION AND VENUE

3. This Court has federal-question jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, and over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

4. This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts and form part of the same case or controversy as the federal claims.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because the unlawful employment practices alleged herein occurred in this District, Catalent maintains its Philadelphia operations in this District, and Ms. Hays worked in and reported to Catalent operations in this District.

## ADMINISTRATIVE EXHAUSTION

6. On October 17, 2024, six days after her termination, Ms. Hays filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2025-00469, alleging disability discrimination, failure to accommodate, and retaliation. The charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

7. The charge named "Catalent Pharma Solutions, Inc." Catalent answered the charge, through its Senior Assistant General Counsel, as "Catalent Pharma Solutions, LLC," the entity named as Defendant here, and Catalent has at all times had actual notice of the charge and of the claims asserted in this action.

8. On September 8, 2026, the EEOC issued Ms. Hays a Notice of Right to Sue. This action is filed within ninety days of her receipt of that notice.

9. More than one year has elapsed since the filing of Ms. Hays's complaint with the PHRC on October 17, 2024, and the PHRC has not entered into a conciliation agreement to which Ms. Hays is a party. Ms. Hays's PHRA claims are therefore ripe pursuant to 43 P.S. § 962(c)(1).

10. Ms. Hays has satisfied all administrative prerequisites to suit under the ADA and the PHRA. No administrative exhaustion is required for claims under the FMLA, and this action is filed within two years of the violations alleged. 29 U.S.C. § 2617(c).

## THE PARTIES

11. Plaintiff Ami L. Hays is an adult individual who, at all relevant times, resided in Harleysville, Montgomery County, Pennsylvania, and worked for Catalent as a Project Coordinator.

12. Defendant Catalent Pharma Solutions, LLC is a pharmaceutical services company headquartered in New Jersey that conducts business in Pennsylvania and within this District, including at its Philadelphia facilities located at 10381 Decatur Road and 10360 Drummond Road, Philadelphia, Pennsylvania 19154, where Ms. Hays worked.

13. At all relevant times, Catalent employed fifteen or more employees and was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

14. At all relevant times, Catalent employed four or more employees and was an "employer" within the meaning of the PHRA, 43 P.S. § 954(b).

15. At all relevant times, Catalent was engaged in commerce or in an industry affecting commerce and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year and was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

16. At all relevant times, Catalent employed fifty or more employees within seventy-five miles of the worksite at which Ms. Hays was employed.

17. At all relevant times, Catalent administered requests for leave under the FMLA through a third-party leave administrator, The Hartford ("Hartford"), which acted as Catalent's agent for purposes of receiving, processing, and responding to employees' requests for FMLA leave. Catalent's own Human Resources personnel directed employees to Hartford "for FMLA" in their standard email signature.

## FACTUAL ALLEGATIONS

### A. Ms. Hays's Employment and the Project Coordinator Role

18. Catalent hired Ms. Hays on June 5, 2023, as a Project Coordinator at its Philadelphia facility.

19. In that role, Ms. Hays coordinated client projects, communicated with internal stakeholders and clients, managed project information, followed project deliverables, and used Catalent's electronic systems to perform her work.

20. The Project Coordinator role was not a position that functionally required in-office appearances.

21. Rather, the core of the role was project coordination, communication, documentation, follow-up, account support, and timely responsiveness.

22. Ms. Hays performed those functions through Catalent's networked systems. This included Microsoft Teams, email, and related project-management and document platforms.

23. Client meetings and internal meetings were regularly conducted by Microsoft Teams or other electronic means.

24. During Ms. Hays's employment, Catalent's project-management work was performed through hybrid and remote arrangements.

25. Catalent hired Ms. Hays into a hybrid working arrangement. From June 2023 until her termination, she worked between two and three days per week in the office and the remainder remotely.

26. Ms. Hays performed successfully under that hybrid arrangement. Throughout her employment she maintained at least a satisfactory performance record and performed her job functions competently.

27. Ms. Hays received positive feedback and was considered for additional responsibilities, including Senior Coordinator responsibilities.

28. Shortly before her termination, Catalent assigned Ms. Hays additional client work, including work relating to major client accounts.

29. Those assignments are inconsistent with any contention that Ms. Hays could not perform the essential functions of her position.

30. Ms. Hays was never disciplined, placed on a performance improvement plan, or warned that her performance was deficient.

**B. Ms. Hays's Disabilities**

31. Ms. Hays has been diagnosed with post-traumatic stress disorder ("PTSD"), anxiety, and a depressive disorder.

32. These conditions are mental impairments that substantially limit one or more major life activities, including concentration, focus, thinking, driving, and working, as well as the operation of major bodily functions, including brain and neurological function.

33. Ms. Hays's conditions are episodic. When her symptoms spike, she experiences panic attacks, heart palpitations, and a racing heart, and requires prescription medication that she cannot take if she must drive. Rigid in-office attendance requirements, an hour-long highway commute, and the stimulation of the office environment aggravate her symptoms.

34. Ms. Hays managed her conditions successfully through a combination of medication, support, and therapy, and was, at all relevant times, under the care of a treating physician.

35. Ms. Hays is also the mother and primary caretaker of an adult daughter who has autism spectrum disorder and 16p11.2 deletion syndrome, as described in Section E below. Managing her daughter's needs can trigger flare-ups of Ms. Hays's own conditions.

**C. The Announced Return-to-Office Escalation**

36. In or around early September 2024, Catalent announced that it would be moving to a four-day in-office week. Soon thereafter, employees were told that the requirement would move to five days.

37. Ms. Hays was told by her manager and director that the expectation was three days in the office, and in the future the company would be moving toward four days onsite and eventually five days, and that there would be no flexibility with that expectation and no excusal regardless of circumstance.

38. The anticipated four or five-day requirement created a disability-related obstacle because Ms. Hays's impairments made rigid full-time office attendance materially more difficult, particularly when her symptoms spiked and when the commute and fixed schedule prevented her from managing those symptoms effectively.

39. On information and belief, Catalent had not actually implemented a four- or five-day in-office requirement for Ms. Hays's project-management group at the time it terminated her employment and never implemented that requirement for her group during the relevant period.

**D. Ms. Hays Requests Accommodation and FMLA Leave, and Catalent Opens the "Interactive Process"**

40. On or about September 9, 2024, Ms. Hays sought assistance from Michele Miske, Catalent's Director of Project Management. Ms. Miske suggested that Ms. Hays contact Human Resources because she appeared to have options under the ADA and the FMLA, and Ms. Miske contacted Ms. Hays's direct manager, Heidi Jennings, to ask her to start the process with Human Resources.

41. On or about September 13, 2024, Ms. Hays met with Nadia Slayton, Catalent's Human Resources Business Partner, to discuss accommodations.

42. During that meeting, Ms. Slayton informed Ms. Hays that she would be eligible for FMLA leave for her daughter and could use that leave in increments in relation to her daughter's needs, and that she could separately apply for ADA accommodations for her own disability. Ms. Slayton provided Ms. Hays with the forms for both.

43. By letter dated September 13, 2024, Ms. Slayton acknowledged Ms. Hays's accommodation request in writing. The letter stated: "[o]n 9/13/2024, you notified us that you may have difficulty performing the essential functions of your job. While you may be entitled to some reasonable accommodation under the Americans with Disabilities Act ("ADA") and/or applicable state law, we must continue our dialogue with you to determine the nature of your condition, the nature and extent of any physical or mental limitations that you may have as a result of your condition, and whether you in fact may be entitled to a reasonable accommodation that

would allow you to perform the essential functions of your job in a satisfactory manner. This is referred to as the 'interactive process.'"

44. The September 13, 2024, letter enclosed an "Interactive Process Questionnaire" to be completed by Ms. Hays's healthcare provider and returned by September 30, 2024.

45. Catalent has since admitted, in its position statement to the EEOC, that "on or about, September 13, 2024, Complainant notified Catalent that she was experiencing health issues that would make it difficult for her to perform the essential functions of her role."

46. Ms. Hays complied with Catalent's process. Her treating physician, Susan C. Gilman, M.D., completed and signed the Interactive Process Questionnaire on September 26, 2024, before Catalent's deadline.

47. Catalent's questionnaire was structured to elicit a finding of inability. Its first question, whether the employee is able to perform the essential functions of the position without reasonable accommodation, offered only a "No" response, followed by the instruction "If no, please continue to the next question."

48. Dr. Gilman identified Ms. Hays's impairment as "Recurrent depression and anxiety" and a "mental" impairment.

49. Dr. Gilman stated that Ms. Hays "is able to work remotely" and "should be able to perform her job functions from a remote location," explaining that the hour-long commute and "the stimulation of in office causes increased stress resulting in severe anxiety," and that if she works remotely there is no issue of harm and she can perform her normal duties.

50. Dr. Gilman's questionnaire thus confirmed to Catalent three things: (1) that Ms. Hays had a qualifying mental impairment; (2) that the impairment was aggravated by the commute

and the in-office environment; and (3) that Ms. Hays could perform every function of the Project Coordinator position remotely.

51. During the week of September 23, 2024, Ms. Hays provided Human Resources with both completed forms, the FMLA certification for her daughter and the ADA questionnaire for herself. At the end of that week, she asked whether the forms were acceptable.

52. On or about September 27, 2024, Ms. Slayton sent Ms. Hays a list of questions. The first asked, "[w]hat alternative accommodations would you like us to consider?"

53. On Sunday, September 29, 2024, Ms. Hays responded to Ms. Slayton in writing, copying Damon Kellum of Catalent. Her email is Catalent's own record of what she actually requested.

54. Ms. Hays wrote, "[t]he accommodation I request is different from my doctor directly, which her ask is full time remote."

55. Ms. Hays explained, "My anxiety and depression symptoms (which are triggered and spike for personal reasons) do limit my ability to be in the office at times (especially a 4-5 day week) and make it hard to work in the office for the full 8 hours at times or the specific days. The accommodation is to complete my work from my home if I am unable to be in. My intention is to still come to the office, however the accommodation requested is to also continue and complete my work and responsibilities at home if I need to leave the office. This accommodation will also allow me make doctor appointments and still complete my work on those days."

56. Ms. Hays described her limitations, "[m]ost recently my anxiety has led to more panic attacks than usual and the need for my medication, which I cannot take if I am going to drive." She explained that when her anxiety is heightened she becomes overwhelmed in the busy

and loud office atmosphere and consumed with thoughts of the hour-long highway commute home, unable to take her medication until she is home.

57. Ms. Hays also reported that Catalent was already refusing to let her work from home in the interim, "I am currently being told by Catalent that my work cannot be completed at home. I will not be paid and am unexcused. This itself has triggered symptoms for last few weeks."

58. Ms. Hays's September 29, 2024 email therefore proposed reasonable accommodations narrower than full-time remote work which included remaining in the existing hybrid model, retaining flexibility regarding which days she would come to the office, and completing the workday from home when her symptoms required it.

59. Ms. Hays's proposed accommodations would not have eliminated any essential function of the Project Coordinator position.

60. Ms. Hays remained willing and able to perform the essential functions of her position with reasonable accommodation.

61. On or about September 30, 2024, Ms. Hays followed up with Human Resources regarding the status of her requests. She did not receive a reply until the following week.

### E. Ms. Hays's FMLA Leave to Care for Her Daughter Is Certified and Approved

62. Ms. Hays's daughter has 16p11.2 deletion syndrome, which contributes to her intellectual disability and autism spectrum disorder.

63. As a result of these conditions, Ms. Hays's daughter requires intensive outpatient psychiatric treatment, monthly medication management, in-home behavioral health services, and ongoing supervision and care from her mother during the hours she is not in school.

64. Ms. Hays's request for FMLA leave was submitted through Hartford.

65. Ms. Hays's daughter's treating psychiatrist, Tonya Lawrence, M.D., a child and adolescent psychiatrist who had treated her in twenty-one office visits from November 2022 through September 20, 2024, completed Hartford's Certification of Health Care Provider for a Family Member's Serious Health Condition and signed it on September 25, 2024.

66. Dr. Lawrence certified that the daughter's condition was chronic, required treatment visits at least twice per year, involved prescription medication, and would cause episodic flare-ups during which she would need care. Dr. Lawrence certified that it was "medically necessary that her caretaker/mother be present in the home for any periods of time that [her daughter] is not in school."

67. Dr. Lawrence certified that Ms. Hays's daughter would need care on an intermittent basis, and estimated the period of need as September 25, 2024 through September 25, 2025.

68. Ms. Hays's daughter's condition is a "serious health condition" within the meaning of the FMLA, 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115(c), and Ms. Hays's daughter is a "son or daughter" within the meaning of 29 U.S.C. § 2611(12) and 29 C.F.R. § 825.122(d), because she is incapable of self-care due to a mental disability.

69. At the time of her request, Ms. Hays had been employed by Catalent for more than twelve months, had worked at least 1,250 hours during the preceding twelve months, and was employed at a worksite where Catalent employed fifty or more employees within seventy-five miles. She was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

70. Ms. Hays was therefore entitled to up to twelve workweeks of leave, taken intermittently or on a reduced schedule as medically necessary, to care for her daughter. 29 U.S.C. § 2612(a)(1)(C), (b)(1).

71. On or about October 8, 2024, Ms. Hays followed up with Ms. Slayton and told her that she might need to use her FMLA leave, or her ADA accommodation, the following week in connection with her daughter's needs.

72. Ms. Slayton informed Ms. Hays that her FMLA leave had been approved and that she could use it the following week. Ms. Slayton said she was still working on the ADA request.

73. Catalent thus knew, no later than October 8, 2024, that Ms. Hays had requested FMLA leave, that the leave had been approved, and that Ms. Hays intended to begin using it the week of October 14, 2024.

74. After receiving Dr. Gilman's questionnaire and Ms. Hays's September 29, 2024 email, Catalent did not "continue [its] dialogue" with Ms. Hays, as its own September 13, 2024 letter said it would.

75. Catalent did not convene a substantive interactive meeting to identify Ms. Hays's precise limitations and potential accommodations that would allow her to continue performing her job.

76. Catalent did not meaningfully evaluate the narrower accommodations Ms. Hays proposed in writing on September 29, 2024.

77. Catalent did not propose an alternative accommodation that would have addressed her limitations.

78. Catalent did not identify specific job duties that Ms. Hays could not perform if permitted the requested flexibility, and did not identify any specific client, project, system, or operational need that would have been compromised by the accommodations she proposed.

79. Catalent did not conduct or provide a reasoned undue-hardship analysis.

80. On or about October 10, 2024, Ms. Hays followed up again with Ms. Slayton. She received no response.

81. On the morning of October 11, 2024, Ms. Hays followed up once more. She then received a notification of a telephone conference at 12:00 p.m. that day with Ms. Slayton and her manager, Ms. Jennings.

82. During the October 11, 2024 call, Ms. Jennings, apparently reading from a script, told Ms. Hays, in words or substance, “we are letting you go.”

83. Ms. Hays, confused, asked, in words or substance, “wait, you are letting me go?” Ms. Slayton confirmed that Catalent could not meet the accommodation she had requested because hers was an on-site position.

84. Ms. Hays asked, in words or substance, “so this is about the ADA application?” and reminded Ms. Slayton that she had offered to come into the office. Ms. Slayton referred to Ms. Hays’s September 29, 2024 email but omitted the portion in which Ms. Hays had offered, as an alternative, to continue coming to the office, and asserted instead that Ms. Hays had said she could not be on site five days a week. That was not an accurate characterization of what Ms. Hays had written.

85. Catalent terminated Ms. Hays’s employment effective October 11, 2024, which was fifteen days after her physician returned the Interactive Process Questionnaire, twelve days after her written clarification, three days after Ms. Slayton told her that her FMLA leave was approved, and the business day before the week in which Ms. Hays had said she would need to begin using that leave.

86. On October 14, 2024, three days after the termination, Ms. Slayton forwarded Ms. Hays's September 29, 2024 email to Ms. Hays's personal email address with the message "Here you go…"

87. By letter dated October 21, 2024, signed by Ms. Slayton, Catalent confirmed her termination. "Please be advised that your employment with Catalent Pharma Solutions has been terminated, effective October 11, 2024." The letter stated no reason for the termination.

88. In its July 18, 2025 position statement to the EEOC, Catalent stated that Ms. Hays's employment was terminated "[d]ue to Complainant's inability to perform the essential function of her job." In other words, Catalent stated it was because of the disability-related limitations for which she had sought accommodation while improperly inflating the in-office requirement as "essential."

89. In the same position statement, Catalent asserted that it "considered and offered an alternative accommodation to the Complainant, but she could not commit to being on site for any specific days or times." The Position Statement did not identify what that alternative was and this is a material misrepresentation of fact. No alternative accommodation was ever offered to Ms. Hays, and her September 29, 2024 email expressly committed to continuing to come to the office.

90. Catalent's position statement does not mention Ms. Hays's FMLA leave request or its approval.

91. Catalent did not terminate Ms. Hays because of performance or misconduct.

92. Catalent terminated Ms. Hays because of her disabilities, because she requested accommodation for her disabilities, and because she requested and was about to begin using FMLA leave.

93. Catalent permitted other project-management employees and related personnel to work remotely or with flexibility during the same general period.

94. On information and belief, employees supporting Catalent's Philadelphia operations were permitted to work remotely from other states or from locations outside the Philadelphia office.

95. On information and belief, at least one employee was permitted to relocate and continue working remotely for the Philadelphia team.

96. On information and belief, at least one other employee was permitted to continue working with remote or flexible arrangements despite not being physically present in the Philadelphia office on the rigid schedule Catalent claimed was essential for Ms. Hays.

97. Those practices demonstrate that physical presence in the office on a rigid three-four- or five-day schedule was not an essential function of Ms. Hays's Project Coordinator role, and that the flexibility Ms. Hays proposed was reasonable and available.

98. In the alternative, even if one accepted Catalent's characterization of Ms. Hays's request as one for full-time remote work, that accommodation was itself reasonable. The Project Coordinator role was performed through electronic systems. Ms. Hays had performed it remotely two to three days every week for sixteen months and Catalent extended remote arrangements to other project-management personnel. In addition, had Ms. Hays been given an opportunity to use the intermittent FMLA it had approved, the days her daughter's needs required her to be home would have been protect leave.

99. Catalent treated Ms. Hays less favorably than similarly situated employees who were permitted to work remotely or with flexibility and denied her the same type of flexibility because she requested accommodation for her disabilities and requested FMLA leave. Indeed,

Catalent allowed another similarly situated Project Coordinator performing substantially the same work as Plaintiff to work remotely from a different state.

100. As a direct and proximate result of Catalent's conduct, Ms. Hays has suffered lost wages and benefits, past and future, and the loss of the professional opportunities and advancement that her position afforded. Her economic losses are continuing.

101. Catalent's termination of Ms. Hays, in the middle of an accommodation process for her mental-health conditions, and three days after approving leave for her to care for her disabled daughter, caused her severe emotional distress, anxiety, humiliation, and loss of enjoyment of life, and aggravated the very conditions for which she had sought accommodation.

102. Catalent acted with malice or reckless indifference to Ms. Hays's federally protected rights. Its Human Resources professionals knew the ADA's requirements, which their letter recited, knew that Ms. Hays's FMLA had been approved, and terminated her anyway.

## COUNT I
## FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
### Americans with Disabilities Act, 42 U.S.C. § 12112(a), (b)(5)(A)

103. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

104. At all relevant times, Ms. Hays was an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102, in that she has mental impairments that substantially limit one or more major life activities, has a record of such impairments, and was regarded by Catalent as having such impairments.

105. At all relevant times, Ms. Hays was a qualified individual within the meaning of 42 U.S.C. § 12111(8), because she could perform the essential functions of the Project Coordinator position with or without reasonable accommodation.

106. Catalent knew of Ms. Hays's disabilities and knew that she was requesting accommodation because of disability-related limitations.

107. Ms. Hays requested reasonable accommodations, including flexibility within the existing hybrid model and the ability to complete work from home when medically necessary, and, in the alternative, remote work.

108. The accommodations Ms. Hays requested were reasonable and would have allowed her to perform the essential functions of her job.

109. Catalent failed to engage in a good-faith interactive process, failed to provide any reasonable accommodation, failed to identify an effective alternative accommodation, and cannot establish that the accommodations Ms. Hays requested would have imposed an undue hardship.

110. Catalent thereby discriminated against Ms. Hays in violation of 42 U.S.C. § 12112(b)(5)(A).

111. As a direct and proximate result of Catalent's conduct, Ms. Hays has suffered the damages described above.

**COUNT II**
**DISABILITY DISCRIMINATION — DISCHARGE: DIRECT AND DISPARATE TREATMENT**
**Americans with Disabilities Act, 42 U.S.C. § 12112(a)**

112. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

113. Catalent terminated Ms. Hays's employment because of her disabilities and because of her disability-related need for accommodation.

114. Catalent's stated reason for the termination, *i.e.*, that Ms. Hays was unable to perform the "essential function" of being on site under an anticipated return-to-office requirement, is inseparable from her disabilities and, in any event, is pretextual, because the requirement had

not been implemented for her group, because other employees were permitted to work remotely or flexibly, and because Ms. Hays had told Catalent she would continue coming to the office.

115. Catalent thereby discriminated against Ms. Hays in violation of 42 U.S.C. § 12112(a).

116. Catalent treated Ms. Hays differently from substantially similar non-disabled employees who performed similar duties. Indeed, Catalent offered at least one such employee remote work.

117. Catalent acted with malice or with reckless indifference to Ms. Hays's federally protected rights, entitling her to punitive damages under 42 U.S.C. § 1981a(b)(1).

118. As a direct and proximate result of Catalent's conduct, Ms. Hays has suffered the damages described above.

**COUNT III**
**RETALIATION**
**Americans with Disabilities Act, 42 U.S.C. § 12203(a)**

119. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

120. Ms. Hays engaged in protected activity under the ADA by requesting reasonable accommodation, providing medical information, clarifying her request, and participating in the accommodation process.

121. Catalent knew of Ms. Hays's protected activity.

122. Catalent took materially adverse action against Ms. Hays by denying accommodation and terminating her employment.

123. The temporal proximity between Ms. Hays's protected activity and her termination, fifteen days from the return of her physician's questionnaire and twelve days from her written

clarification, together with Catalent's abandonment of the interactive process it had itself opened, its mischaracterization of her request, and its reliance on an anticipated office-attendance policy that was not actually implemented for her group, establishes a causal connection between the protected activity and the adverse action.

124. Catalent's stated rationale was pretextual because Ms. Hays did not demand permanent full-time remote work, remained willing to report to the office, proposed narrower accommodations, had performed successfully in a hybrid environment, and worked in a role that other Catalent employees performed remotely or flexibly.

125. Catalent retaliated against Ms. Hays in violation of 42 U.S.C. § 12203(a).

126. As a direct and proximate result of Catalent's retaliation, Ms. Hays has suffered the damages described above.

**COUNT IV**
**INTERFERENCE**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)**

127. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

128. At all relevant times, Ms. Hays was an eligible employee, Catalent was a covered employer, and Ms. Hays's daughter was a son or daughter with a serious health condition within the meaning of the FMLA.

129. Ms. Hays was entitled to up to twelve workweeks of FMLA leave, taken intermittently or on a reduced schedule as medically necessary, to care for her daughter. 29 U.S.C. § 2612(a)(1)(C), (b)(1).

130. Ms. Hays gave Catalent, through its Human Resources department and its leave administrator, adequate notice of her need for FMLA leave; her daughter's treating psychiatrist

provided a certification supporting the leave; and Catalent approved the leave on or before October 8, 2024.

131. Catalent interfered with, restrained, and denied Ms. Hays's exercise of and attempt to exercise her FMLA rights, in violation of 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220, by, among other things: (a) terminating her employment three days after approving her leave and before she could take any of it, thereby denying her the leave in its entirety; (b) treating her disability- and caregiving-related absences and flexibility needs as unexcused and unpaid rather than as protected leave; and (c) failing to restore her to her position or an equivalent position.

132. Ms. Hays was prejudiced by Catalent's interference. She lost the approved leave to which she was entitled and lost her employment, wages, and benefits. She would have been able to continue to work and provide for her child's needs if provided FMLA.

133. Catalent's violations were not in good faith, and Catalent had no reasonable grounds for believing that its conduct was not a violation of the FMLA. Ms. Hays is entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

134. As a direct and proximate result of Catalent's interference, Ms. Hays has lost wages, salary, employment benefits, and other compensation, and is entitled to the relief provided by 29 U.S.C. § 2617(a)(1).

**COUNT V**
**RETALIATION**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c)**

135. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

136. Ms. Hays invoked her right to FMLA-qualifying leave by requesting leave through Catalent's Human Resources department and leave administrator, submitting a certification from

her daughter's treating psychiatrist, and informing Catalent on October 8, 2024 that she would need to begin using the leave the following week. Invoking the right to FMLA leave is protected activity, whether or not the leave has yet commenced.

137. Catalent knew of Ms. Hays's request for FMLA leave; its Human Resources Business Partner told Ms. Hays the leave was approved.

138. Catalent terminated Ms. Hays's employment three days after telling her that her leave was approved, and the business day before the week in which she had said she would begin using it.

139. The unusually suggestive temporal proximity between Ms. Hays's invocation of her FMLA rights and her termination, Catalent's silence about the approved leave in its explanation of the termination, and the pretextual nature of Catalent's stated reason establish that Catalent terminated Ms. Hays because she requested and was about to use FMLA leave, and used her leave request as a negative factor in its decision, in violation of 29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(c).

140. Catalent's violations were not in good faith, and Catalent had no reasonable grounds for believing that its conduct was not a violation of the FMLA. Ms. Hays is entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

141. As a direct and proximate result of Catalent's retaliation, Ms. Hays has lost wages, salary, employment benefits, and other compensation, and is entitled to the relief provided by 29 U.S.C. § 2617(a)(1).

## COUNT VI
## DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION
**Pennsylvania Human Relations Act, 43 P.S. § 955(a), (d)**

142. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

143. At all relevant times, Ms. Hays was an individual with a disability within the meaning of the PHRA, 43 P.S. § 954(p.1).

144. At all relevant times, Ms. Hays was able to perform the essential functions of her position with or without reasonable accommodation.

145. Catalent knew of Ms. Hays's disabilities and her need for accommodation, and Ms. Hays requested reasonable accommodations under the PHRA.

146. Catalent failed to engage in a good-faith interactive process, failed to reasonably accommodate Ms. Hays, and terminated her employment because of her disabilities and her need for accommodation, in violation of 43 P.S. § 955(a).

147. Ms. Hays engaged in protected activity under the PHRA by requesting accommodation and participating in the accommodation process, and Catalent terminated her employment because she did so, in violation of 43 P.S. § 955(d).

148. As a direct and proximate result of Catalent's conduct, Ms. Hays has suffered the damages described above, including economic loss and emotional distress, which are compensable without limitation under the PHRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ami L. Hays respectfully requests that this Court enter judgment in her favor and against Defendant Catalent Pharma Solutions, LLC, and award the following relief:

a. A declaration that Catalent violated the ADA, the FMLA, and the PHRA;

b. Back pay, front pay, lost benefits, and all other economic damages;

c. Liquidated damages under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii), in an amount equal to her lost wages, salary, employment benefits, and other compensation, plus interest;

d. Compensatory damages under the ADA and the PHRA, including damages for emotional distress, humiliation, loss of enjoyment of life, and other non-economic harm;

e. Punitive damages under the ADA;

f. Equitable relief, including reinstatement or front pay in lieu of reinstatement, as appropriate;

g. Pre-judgment and post-judgment interest;

h. Reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), and 43 P.S. § 962(c.2); and

i. Such other legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

HENNESSY LAW, P.C.

By: /s/ Brendan Hennessy
___________________________

Brendan D. Hennessy, Esquire
PA I.D. No. 91831
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(267) 344-3600
bhennessy@hennessylawfirm.com
Counsel for Plaintiff Ami L. Hays

Dated: September 25, 2026